**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

| | |
|---|---|
| GREEN MOUNTAIN CHRYSLER PLYMOUTH DODGE JEEP; GREEN MOUNTAIN FORD MERCURY; JOE TORNABENE'S GMC; ALLIANCE OF AUTOMOBILE MANUFACTURERS; DAIMLERCHRYSLER CORPORATION; and GENERAL MOTORS CORPORATION, | |
| Plaintiffs, | |
| v. | Case No. 2:05-cv-302 |
| CANUTE D. DALMASSE,[1] Acting Secretary of the Vermont Agency of Natural Resources; JEFFREY WENNBERG, Commissioner of the Vermont Department of Environmental Conservation; and RICHARD VALENTINETTI, Director of the Air Pollution Control Division of the Vermont Department of Environmental Conservation, | |
| Defendants, | |
| CONSERVATION LAW FOUNDATION; SIERRA CLUB; NATURAL RESOURCES DEFENSE COUNCIL; VERMONT PUBLIC INTEREST RESEARCH GROUP; STATE OF NEW YORK; and DENISE M. SHEEHAN, in her official capacity as Commissioner of Environmental Conservation of the State of New York, | |
| Defendants-Intervenors. | |
| | **consolidated with** |
| THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS, | |
| Plaintiff, | |
| v. | Case No. 2:05-cv-304 |
| CANUTE D. DALMASSE, in his official | |

---

[1] Acting Secretary Dalmasse has been substituted for former Secretary Torti, pursuant to Fed. R. Civ. P. 25(d)(1).

capacity as Acting Secretary of the       :
Vermont Agency of Natural Resources;      :
JEFFREY WENNBERG, in his official         :
capacity as Commissioner of the Vermont   :
Department of Environmental               :
Conservation; RICHARD A. VALENTINETTI,    :
in his official capacity as Director of   :
the Vermont Air Pollution Control         :
Division,                                 :
                                          :
        Defendants,                       :
                                          :
CONSERVATION LAW FOUNDATION; SIERRA       :
CLUB; NATURAL RESOURCES DEFENSE COUNCIL;  :
VERMONT PUBLIC INTEREST RESEARCH GROUP;   :
STATE OF NEW YORK; and DENISE M.          :
SHEEHAN, in her official capacity as      :
Commissioner of Environmental             :
Conservation of the State of New York,    :
                                          :
        Defendants-Intervenors.           :

## MEMORANDUM OPINION and ORDER

The Plaintiffs in these consolidated cases seek a declaratory judgment that new regulations adopted by the State of Vermont Agency of Natural Resources are either preempted by or violate various federal constitutional and statutory provisions, including the Clean Air Act ("CAA"), Pub. L. No. 88-206, 77 Stat. 392 (1963), 42 U.S.C.A. §§ 7401-7671q (West 2003), and the Energy Policy and Conservation Act of 1975 ("EPCA"), Pub. L. No. 94-163, 89 Stat. 871 (1975) (codified as amended in 42 U.S.C. and 49 U.S.C.). The Defendants ("State" or "State of Vermont") have moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, on the grounds that the actions are not ripe under Article III of the

2

United States Constitution.  For the reasons that follow, the motion (Doc. 48) is **denied.**

I. **Background**

Title II of the CAA as amended in 1990 authorizes the Administrator of the United States Environmental Protection Agency ("EPA") to promulgate emission standards for new motor vehicles sold in the United States.  42 U.S.C.A. § 7521.  Motor vehicle emission standards primarily regulate emissions of hydrocarbons, carbon monoxide, nitrogen oxides, particulate matter, and volatile organic compounds.  *See id.; Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. N.Y. State Dep't of Envtl Conservation (MVMA III)*, 17 F.3d 521, 526 (2d Cir. 1994).

In 1967 Congress amended the CAA to declare that it preempted state new motor vehicle emission standards.  Pub. L. No. 90-148, 81 Stat. 485 (codified at 42 U.S.C.A. § 7543(a)).  The state of California received a waiver from preemption as the only state regulating auto emissions prior to March 30, 1966, provided it met certain conditions.  *Id.*  The CAA amendments of 1977 allowed "other states to 'piggyback' onto California's standards, if the state's standards 'are identical to the California standards for which a waiver has been granted for such model year.'" *MVMA III*, 17 F.3d at 525; Clean Air Act Amendments of 1977, Pub. L. No. 95-95, 91 Stat. 685.

California may only adopt and enforce its own emission

standards after applying to and obtaining the approval of the EPA for a waiver of preemption. *See* CAA, Section 209(b), 42 U.S.C.A. § 7543(b)(1). The California Air Resources Board ("CARB"), the state agency responsible for regulating air pollution, must first determine that its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." *Id.* The EPA Administrator can deny the waiver request on a finding that California's determination is arbitrary and capricious; that California does not need the standards to meet compelling and extraordinary conditions; or that California's standards are not consistent with EPA regulations concerning air pollutant emission standards for new motor vehicles authorized by § 7521(a)(1). *Id.* Standards that do not allow adequate lead time to permit the development of necessary technology will be deemed inconsistent. *MVMA III*, 17 F.3d at 526.

Any state may "opt in" to California's standards, as long as its standards are identical to California's; California receives a waiver from the EPA for the standards; and both California and the opt-in state adopt the standards at least two years before the beginning of the automobile model year to which they apply. CAA § 177, 42 U.S.C.A. § 7507.

As one of its purposes--to provide for improved energy efficiency of motor vehicles--the EPCA established average fuel

4

economy standards for new vehicles.  EPCA § 502, 49 U.S.C.A. § 32902.  For non-passenger automobiles the standards must "be the maximum feasible average fuel economy level" that a manufacturer can achieve in a model year.  *Id.* § 32902(a).  The standard may be different for different classes of automobiles.  *Id.*  For passenger automobiles manufactured after 1984 the average fuel economy standard is 27.5 miles a gallon, *id.* § 32902(b), except that the standard may be amended to a maximum feasible average fuel economy level.  *Id.* § 32902(c)(1).  Technological feasibility, economic practicability, the need to conserve energy, and the effect of other federal motor vehicle standards on fuel economy must be taken into consideration when setting a fuel economy standard under this section.  *Id.* § 32902(f).

The EPCA preempts state laws or regulations related to fuel economy standards:

> When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a state may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

*Id.* § 32919(a).

Pursuant to Section 177 of the CAA, Vermont adopted greenhouse gas ("GHG") regulations promulgated by CARB. Identical to the California standards, the regulations will establish declining fleet average GHG emission standards for passenger vehicles to be phased in over an eight-year period, and

will provide alternative compliance methods such as the generation of GHG credits from alternative fuel vehicles or banking and trading of credits among manufacturers.  Both California and Vermont adopted their GHG regulations at least two years before the beginning of the 2009 model year, which is when the regulations are intended to become effective.

Although California filed a waiver application for its GHG regulations on December 21, 2005, the EPA has yet to complete its review of the application and grant or deny it.  The CAA contains no time limits for completion of the waiver process.

The Plaintiffs in Docket No. 2:05-cv-302 seek the following declaratory and injunctive relief: (1) a declaration that Vermont's GHG regulations are preempted by the EPCA and must be enjoined from enforcement (Count I); (2) a declaration that the GHG regulations are preempted by the CAA and must be enjoined from enforcement (Counts II & III); a declaration that the GHG regulations violate the foreign policy of the United States and the foreign affairs power of the President and the United States Congress (Count IV); a declaration that the GHG regulations violate the Dormant Commerce Clause of the United States Constitution (Count V); and a declaration that the GHG regulations are preempted by the Sherman Act and must be enjoined from enforcement (Count VI).  The Plaintiff in Docket No. 2:05-cv-304 claims that Vermont's GHG regulations are preempted by the

EPCA and the CAA and must be enjoined from enforcement.

## II. Discussion

### A. Legal Standards

The burden of proving subject matter jurisdiction is on the party asserting it, in this case the plaintiffs. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). On a motion to dismiss, where a district court relies solely on the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of jurisdiction. *Id.*

### B.   Standing

Although the State neither challenges nor concedes the Plaintiffs' standing, *see* Defs.' Mot. to Dismiss 10 n. 8 (Doc. 48), this Court has an independent obligation to assure itself that it has subject matter jurisdiction over this suit. *See N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 325 (2d Cir. 2003).  Consequently the Court will address whether Plaintiffs have adequately alleged standing.  The standing inquiry involves examination of whether a plaintiff has alleged a "an injury in fact, fairly traceable to the challenged action, and likely to be redressed by a favorable decision." *Massachusetts v. EPA*, 415 F.3d 50, 54 (D.C. Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), *cert. granted* 126 S. Ct. 2960 (2006).  An injury in fact is defined as "an invasion of a legally protected interest which is (a)

concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *accord Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). "Particularized" means "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

When examining standing on the basis of the pleadings, a court "accept[s] as true all material allegations of the complaint, and . . . construe[s] the complaint in favor of the complaining party." *Bldg. & Constr. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006) (quoting *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002)). The Plaintiffs in Case No. 2:05-cv-302 are three[2] Vermont motor vehicle dealers, an association of automobile manufacturers that produce and sell vehicles to the dealers, and two automobile manufacturers. The Plaintiff in Case No. 2:05-cv-304 is an association of manufacturers, importers and distributors of motor vehicles manufactured both in and outside the United States.

As to the automobile manufacturers, the complaint alleges that compliance with Vermont's GHG regulations will disrupt the development process already underway for new vehicles in model year 2009. Compl. 2:05-cv-302 ¶ 89. Manufacturers currently

---

[2] Plaintiff Cody Chevrolet, Inc. was dismissed from the case pursuant to stipulation dated December 19, 2005.

have to choose between continuing their product development according to the status quo and facing the prospect of sanctions for noncompliance with the GHG regulations should a waiver be granted, or gearing up for an expensive redesign for model year 2009 that may erode profits and may prove unnecessary.  *Id.* ¶ 90. The manufacturers allege that it will take years to design, test and produce vehicles capable of meeting the GHG regulations, and that they must begin now if they are to meet the regulations' deadlines.  *Id.* ¶ 91; *see also* 2:05-cv-304 Compl. ¶ 50.[3]

The Vermont dealers allege that as a result of the manufacturers' dilemma, many currently offered models of vehicles sold in Vermont will disappear from their showrooms, because it will not be economically practical to bring these vehicles into compliance with the new standards.  *Id.* ¶¶ 60, 62.  Other models will become more expensive.  *Id.* ¶ 63.  The dealers allege that the prospect of the new regulations taking effect and placing them at a competitive disadvantage has reduced the present value

---

[3]  Plaintiffs Alliance of Automobile Manufacturers ("AAM") and Association of International Automobile Manufacturers ("AIAM") bring suit on behalf of their members, which include domestic and foreign automobile manufacturers.  2:05-cv-302 Compl. ¶ 19; 2:05-cv-304 Compl. ¶ 10.  An association may bring suit on behalf of its members if one or more of their members have standing and the interests at stake are germane to their purpose.  *Fair Housing in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 363-64 (2d Cir. 2003); *accord N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1348 (2d Cir. 1989) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).  If the manufacturers have standing, then AAM and AIAM, with the same interests at stake here, have standing as well.

of their businesses.  *Id.* ¶ 64.[4]

If the plaintiffs are the object of the government action at issue "there is ordinarily little question that the action . . . has caused [them] injury, and that a judgment preventing . . . the action will redress it."  *Lujan*, 504 U.S. at 561-62.  Although the State does not challenge the Plaintiffs' standing, it maintains in a footnote that the non-dealer plaintiffs' injury is contingent on the EPA waiver, and the dealer plaintiffs' injury derives from calculations that assume that a waiver has been granted.  Defs.' Reply 2-3 n. 1.  The non-dealer plaintiffs have alleged both current and future economic harm in their complaints, however, as have the dealer plaintiffs.[5]  Probable economic injury resulting from governmental action that alters competitive conditions will satisfy the injury-in-fact

---

[4]  The State takes issue with the declaration of Donald Wisehart, a CPA, who calculated a loss of present value of the dealers' businesses based on the expected enforcement of the GHG regulations.  *See* Wisehart Decl. (Doc. 71).  Although this declaration is obviously not evidence that the dealers are currently experiencing injury, at this stage of the litigation the Court has accepted the complaint's allegations as true and has not considered the Wisehart declaration in its standing or ripeness determinations.

[5]  Even were the dealer plaintiffs unable to demonstrate standing, they raise the same claims as the non-dealer plaintiffs, who have more clearly alleged current harm not contingent upon the EPA waiver.  If the non-dealer plaintiffs have Article III standing, it is unnecessary to address the standing of other plaintiffs. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 126 S. Ct. 1297, 1303 n.2 (2006) (presence of one party with standing will satisfy Article III).

requirement.  *Clinton v. City of N.Y.*, 524 U.S. 417, 432-33 (1998) (citing 3 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise 13-14 (3d ed. 1994)).

At this early stage of the litigation, the Plaintiffs have satisfied their burden of alleging injury-in-fact.  *See, e.g.*, *N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d at 326 ("'injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice'") (quoting *LaFleur v. Whitman*, 300 F.3d 256, 270-71 (2d Cir. 2002)).  There appears to be no dispute that causation and redressability are not at issue if injury-in-fact has been shown.

**C.   Ripeness**

Because the EPA has not yet granted California's waiver application, the State of Vermont claims that the Plaintiffs' suits for declaratory and injunctive relief are not yet ripe for judicial action, because 1) they rest upon a contingent future event, EPA's granting California a waiver of preemption under § 209 of the CAA; 2) the Plaintiffs have no cognizable injury or threat of injury; and 3) the cases are not prudentially ripe.

The doctrine of ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized

and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977); *accord Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003).  The "'ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 n. 7 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n. 18 (1993)).  In determining ripeness on constitutional or prudential grounds, a court examines "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Abbott Labs.*, 387 U.S. at 149; *accord Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. N.Y. State Dep't of Envtl. Conservation* (MVMA V), 79 F.3d 1298, 1305 (2d Cir. 1996); *see also Simmonds v. INS*, 326 F.3d 351, 359 (2d Cir. 2003) (*Abbott Labs.*' analysis relevant to constitutional and prudential determination); *but see Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (fitness inquiry examines Article III restraints, while hardship inquiry involves prudential considerations).

Like any suit filed in federal court, a federal declaratory judgment action cannot present a hypothetical controversy. Nevertheless, a declaratory judgment action is usually filed to

prevent or avoid an anticipated harm.  No "precise test" enables a court to distinguish an abstract or hypothetical question from a case or controversy; the difference is one of degree.  *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297-98 (1979) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 73 (1941)).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Md. Cas. Co.*, 312 U.S. at 273; *accord Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972).  Put slightly differently, "[t]he basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *United Farm Workers*, 442 U.S. at 298 (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)); *accord MVMA* V, 79 F.3d at 1305.

A plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *United Farm Workers*, 442 U.S. at 298, although "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough.'"  *Id.* (quoting *Pennsylvania v. West*

*Virginia,* 262 U.S. 553, 593 (1923)). "*[A]bsolute* certainty of injury is not required for a case to be constitutionally ripe," however. *Simmonds*, 326 F.3d at 358 (emphasis in original).

When a provision has no immediate effect on a plaintiff's conduct, a pre-enforcement challenge will ordinarily be rejected as unripe. *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 386 (1999). However, a declaratory judgment action should not be rejected as unripe merely because a law has not yet taken effect, where there is no real dispute that it will apply to the party challenging it and where the party must begin now to prepare to comply with the law. *See New York v. United States*, 505 U.S. 144, 175 (1992) (issue ripe for review where state had to take action immediately in order to avoid the consequences of a provision whose effective date was several years off); *see also Lake Carriers*, 406 U.S. at 507 (action ripe where owners and operators of cargo vessels that discharged sewage in state's navigable waters had to install sewage storage devices that might not be required under proposed but not yet effective federal standards). A challenge may be ripe where "'the prospect or fear of future events may have a real impact on present affairs.'" *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 63-64 (2d Cir. 1988) (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532.2 (2d ed. 1984); *see also Lujan v. Nat'l Wildlife Fed'n*, 497

U.S. 871, 891 (1990) (agency action is ripe for review if it "as a practical matter requires the plaintiff to adjust his conduct immediately"); *United States v. Johnson*, 446 F.3d 272, 279 (2d Cir. 2006) ("case may be ripe even before formal enforcement if a 'direct and immediate' impact is suffered from the challenged policy") (quoting *Abbott Labs.*, 387 U.S. at 152).

Certainly the fact that Vermont's regulations may never be enforceable should the EPA not grant California its waiver suggests that the Plaintiffs' challenge could be deemed premature. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (claim is not ripe if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all"). Nevertheless, early review may be appropriate when "the legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citing *Abbott Labs.*, 387 U.S. at 148-49).

There is nothing hypothetical about the situation currently facing the manufacturers and dealers. Their situation is virtually no different from any suit seeking declaratory relief from an agency's final action: in such cases the agency could revisit or revoke its decision, possibly rendering the suit moot, but not affecting its ripeness at the time of filing. The State has adopted final regulations, and there appears to be no

15

question that it will enforce its regulations once EPA grants the waiver.[6]

Even though the State will not attempt to enforce the regulations unless and until a waiver is granted, the non-dealer plaintiffs have claimed that they must currently proceed to redesign their vehicles as though the waiver will be granted, in order to meet the expected deadlines for the new standards. Although the Plaintiffs are therefore not currently under immediate threat of enforcement, they allege that they are forced regardless to begin to comply with the regulations. An agency action is ripe for judicial review if its "'decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Thomas v. City of N.Y.*, 143 F.3d 31, 34

---

[6] In *MVMA III*, a panel of the Second Circuit Court of Appeals held that § 177 of the CAA, allowing a state to adopt and enforce standards identical to California standards for which a waiver has been granted, permits a state to adopt but not to enforce standards prior to California's obtaining the waiver. *MVMA III*, 17 F.3d at 534. The panel noted that California's waiver applications "are almost always approved," and reasoned that by adopting without enforcing prior to the waiver, a state puts the automobile manufacturers on notice well in advance of enforcement that it intends to follow California, thereby affording them adequate lead time to comply. *Id.* The State of Vermont has taken advantage of *MVMA III*'s holding that it is permissible to adopt California's regulations prior to a waiver from the EPA, enabling it to put its regulations into effect sooner than it could if it had to await the waiver. The State does not suggest that it will delay enforcement once the regulations are enforceable. In this context the State's argument in support of unripeness--that the manufacturers are currently under no obligation to comply and therefore have no cognizable injury--approaches the disingenuousness of which the manufacturers were accused in *MVMA III*. *See id.*

(2d Cir. 1998) (quoting *Abbott Labs.*, 387 U.S. at 148-49).

There is no indication here that the State of Vermont will make any changes to its regulations, and every indication that it will not: if its regulations diverge from California's it will lose its right to piggyback on the California regulations.  The only uncertainty present in the case is whether the EPA will grant California a waiver.  That question may remain unanswered for months, if not years.  There is, however, no question that the preemption and constitutional challenges to Vermont's GHG regulations are as concrete and fit for decision today as they would be if and when the regulations are enforced.  *See, e.g., Atlanta Gas Light Co. v. U.S. Dep't of Energy*, 666 F.2d 1359, 1363-64 n. 7 (11th Cir. 1982) (Commerce Clause challenge was unlikely to change in substance or clarity following action for enforcement).

The Plaintiffs' challenges to Vermont's GHG regulations are neither abstract nor hypothetical.  They have alleged current injury that is not contingent upon future events, as well as the threat of future injury should the EPA grant the waiver from preemption.[7]  Moreover, the EPCA preempts any state's adoption or

---

[7] The allegations of current injury serve to distinguish this case from the unpublished decision in *Int'l Truck & Engine Corp. v. Lloyd*, CIV. S-01-1245 GEB GGH, slip op. at 7 (E.D. Cal. Oct. 24, 2001), dismissing for lack of constitutional ripeness a challenge to CARB regulations for which a waiver had not yet been applied.  In that case the district court noted that the plaintiff had failed to show that the new regulations required

17

enforcement of "a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard."  49 U.S.C.A. § 32919(a).  Preemption under the EPCA thus does not depend on whether the regulations are currently enforceable.  The challenges are constitutionally ripe.

The Court also will not decline to exercise jurisdiction for lack of prudential ripeness.  With regard to fitness, "issues have been deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now."  *Simmonds*, 326 F.3d at 359.  The purely legal questions raised in this lawsuit are as well determined now as later, except for the uncertainty as to whether a determination will even be necessary, given California's pending waiver application.  As discussed above, this uncertainty does not render the case hypothetical for purposes of Article III ripeness, but it provides a strong counterbalance to the other fitness contention, that further factual development would not aid review.  *See id.* at 360 (uncertainty of parole did not render case unripe under Article III, but weighed against fitness).

With regard to hardship, the Plaintiffs have alleged

---

immediate changes in its present conduct.  *Id.*, slip op. at 6.

persuasively that they would suffer substantial hardship from a delay in adjudicating their challenges to Vermont's GHG regulations.  Their strong showing on this factor tips the balance in favor of exercising jurisdiction on prudential grounds.  *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (question of federal preemption by Atomic Energy Act was predominantly legal and postponement of decision would likely work substantial hardship on utilities challenging state statute imposing moratorium on certification of new nuclear plants).

**III. Conclusion**

   For the reasons stated, the State's motion to dismiss (Doc. 48) is denied.

    Dated at Burlington, Vermont this 30th day of November, 2006.

                          /s/ William K. Sessions III
                          William K. Sessions III
                          Chief Judge