## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

GREEN MOUNTAIN CHRYSLER PLYMOUTH DODGE    :
JEEP; GREEN MOUNTAIN FORD MERCURY;        :
JOE TORNABENE'S GMC; ALLIANCE OF          :
AUTOMOBILE MANUFACTURERS;                 :
DAIMLERCHRYSLER CORPORATION; and          :
GENERAL MOTORS CORPORATION,               :
                                          :
        Plaintiffs,               :
                                          :
        v.                        :    Case No. 2:05-cv-302
                                          :
GEORGE CROMBIE, Secretary of the Vermont  :
Agency of Natural Resources; JEFFREY      :
WENNBERG, Commissioner of the Vermont     :
Department of Environmental               :
Conservation; and RICHARD VALENTINETTI,   :
Director of the Air Pollution Control     :
Division of the Vermont Department of     :
Environmental Conservation,               :
                                          :
        Defendants,               :
                                          :
CONSERVATION LAW FOUNDATION; SIERRA       :
CLUB; NATURAL RESOURCES DEFENSE COUNCIL;  :
VERMONT PUBLIC INTEREST RESEARCH GROUP;   :
STATE OF NEW YORK; and DENISE M.          :
SHEEHAN, in her official capacity as      :
Commissioner of Environmental            :
Conservation of the State of New York,    :
                                          :
        Defendants-Intervenors.   :

                                                       **consolidated with**

THE ASSOCIATION OF INTERNATIONAL         :
AUTOMOBILE MANUFACTURERS,                 :
                                          :
        Plaintiff,                :
                                          :
        v.                        :    Case No. 2:05-cv-304
                                          :
GEORGE CROMBIE, in his official capacity: :
as Secretary of the Vermont Agency of     :
Natural Resources; JEFFREY WENNBERG, in   :
his official capacity as Commissioner of: :

the Vermont Department of Environmental    :
Conservation; RICHARD A. VALENTINETTI,     :
in his official capacity as Director of    :
the Vermont Air Pollution Control          :
Division,                                  :
                                           :
          Defendants,                      :
                                           :
CONSERVATION LAW FOUNDATION; SIERRA        :
CLUB; NATURAL RESOURCES DEFENSE COUNCIL;   :
VERMONT PUBLIC INTEREST RESEARCH GROUP;    :
STATE OF NEW YORK; and DENISE M.           :
SHEEHAN, in her official capacity as       :
Commissioner of Environmental             :
Conservation of the State of New York,     :
                                           :
          Defendants-Intervenors.          :

## OPINION and ORDER

"'An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*") (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). The Plaintiffs in this case, a group of automobile manufacturers, trade associations and local automobile dealers, have sued the State of Vermont, asserting principally that Vermont's new greenhouse gas emissions standards for motor vehicles should be struck down as preempted by the Energy Policy and Conservation Act, 49 U.S.C.A. §§ 32901-32919 (West 1997 & Supp. 2006). On March 8, 2007, two weeks before the trial was scheduled to begin, the Plaintiffs filed a Motion to Present Certain Testimony *In Camera* to Protect Trade Secrets (Doc. 268).

Gannett Vermont Publishing, Inc., d/b/a Burlington Free

2

Press ("BFP") moved to intervene pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure for the limited purpose of objecting to Plaintiffs' motion.  The Defendants State of Vermont officials, and Defendants-Intervenors, consisting of environmental groups and the State of New York, support BFP's motion to intervene and oppose the Plaintiffs' motion.  At a hearing on March 19 the Court took the motion to intervene under advisement and indicated that it would issue a ruling shortly on the process by which it would determine whether the Plaintiffs are entitled to this extraordinary relief.

### Intervention

For the reasons that follow, BFP is granted permissive intervention pursuant to Rule 24(b) for the limited purpose it has requested.  Because permissive intervention is granted, it is unnecessary to decide whether BFP has a right to intervention under Rule 24(a)(2).

Permissive intervention under Rule 24(b)(2) may be allowed if an applicant demonstrates that (1) its motion is timely, and (2) its claim or defense and the main action have a question of law or fact in common.  Fed. R. Civ. P. 24(b)(2).  Plaintiffs suggest that BFP's motion is untimely, noting that the first protective order regarding the parties' discovery was entered on the docket eleven months ago, and that it and subsequent protective orders contemplated that the parties might seek to

3

limit public access at trial to testimony or documents designated
as Highly Confidential Information.  *See, e.g.*, Second Am. Stip.
& Protective Order Regarding Handling of Confidential Information
¶ 14 (Doc. 107) ("Protective Order").  Nevertheless, until the
Plaintiffs filed their motion on March 8, 2007, any limits on
public access to evidence to be used at trial remained
speculative.  BFP notified the Court of its intention to seek
intervention on March 9, participated at the Court's request in
an effort to resolve or narrow the issues by March 14, and filed
its motion to intervene on March 15, 2007, the day following the
parties' notice to the Court that they had not reached
resolution.  BFP's motion is unquestionably timely.

    Plaintiffs do not contest that BFP claims an issue of law or
fact in common with the main action.  Although case law has noted
that it is debatable whether the literal language of Rule 24 fits
intervention for the purpose of challenging confidentiality or
closure orders, *see e.g., Jessup v. Luther*, 227 F.3d 993, 997
(7th Cir. 2000); *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d
1042, 1045 (D.C. Cir. 1998), this Circuit joins the other
Circuits that have considered the question in concluding that
permissive intervention under Rule 24(b) is an appropriate
device.  *See Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291,
294 (2d Cir. 1979); *see also Jessup*, 227 F.3d at 997, *Nat'l
Children's Ctr.*, 146 F.3d at 1045 (collecting cases); *Pansy v.*

4

*Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

In exercising its discretion to permit intervention, a court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24 (b).  There is no question that a review of every piece of testimonial or documentary evidence for which protection is sought will result in a delay of trial. Indeed, the original date for the commencement of trial has been postponed for two weeks to address the significant First Amendment and public access issues.  However, the Court cannot conclude that this delay is undue, or even that it is entirely attributable to BFP's intervention.

The Defendants in this case timely filed opposition to the Plaintiffs' motion on March 19, 2007, on grounds similar to those that BFP asserts.  Regardless of BFP's participation, the public access issue must and will be determined before trial.  As discussed in greater detail below, the Second Circuit standard requires "specific on-the-record findings that higher values necessitate a narrowly tailored sealing" whenever a party seeks to prevent disclosure of judicial documents.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  The parties and the Court contemplate that this undertaking can be

accomplished within two weeks.  Given the importance of the
issues, a two week delay of the start of trial is not undue.

## Motion to Close and/or Seal

The Plaintiffs contend that, although mindful of the
important role the press and the public play in the judicial
process, they are obliged to request that they be excluded from
hearing certain trial testimony or viewing certain trial exhibits
in order to protect the Plaintiffs' highly confidential trade
secrets.  The Plaintiffs propose instead to edit daily transcript
of the portions of the trial from which the public has been
excluded and to release the portions that do not reveal trade
secrets.  Pls.' Mot. 1-2.  They describe their highly
confidential information as involving future product plans,
vehicle design information including fuel economy effects, cost
and pricing estimates, market data, financial projections and
experts' proprietary data analysis software, and profit and loss
information.  *Id.* 2, 10.  They estimate that nearly one-fifth of
their trial exhibits (approximately 121 exhibits) need to be
redacted or sealed, substantial portions of deposition testimony
from five or more witnesses should be taken *in camera*, and the
public and press should be excluded from portions of the live
testimony of ten witnesses.

Although the Plaintiffs attempt to downplay the significance
of their request, stressing that thousands of pages of documents

and numerous witnesses will be presented in open court, any request to close a courtroom for a portion of a trial challenges one of the most vital principles upon which our judicial system is founded:  the presumption of public access.

> The presumption of access is based on the need for federal courts, although independent-indeed particularly because they are independent-to have a measure of accountability and for the public to have confidence in the administration of justice.  Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke.  Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control . . . . Without monitoring . . . the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings.  Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Amodeo II*, 71 F.3d at 1048.  "Public access to civil trials enhances the quality and safeguards the integrity of the factfinding process, fosters an appearance of fairness, and heightens public respect for the judicial process." *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (internal citations and quotation marks omitted).

In particular, the Plaintiffs are asking a federal court to enjoin the Defendants from implementing or enforcing regulations promulgated by the Vermont Department of Environmental Conservation under authority granted by the Vermont legislature.

These regulations are intended to ameliorate the effects of global warming by requiring reduction of carbon dioxide emissions from new motor vehicles.  The Plaintiffs have a right to challenge the regulations; they have asserted significant federal questions.  But "professional and public monitoring" of this process is critical on an issue of such profound significance to the public.

I.   The *Lugosch* standard

    The Second Circuit recently addressed the right of public access under both the common law and the First Amendment in *Lugosch v. Pyramid Co. of Onandaga.*  The plaintiffs in *Lugosch* brought an action alleging various financial improprieties committed by Pyramid and its majority general partner.  News organizations moved to intervene to secure access to documents filed under seal in connection with a motion for summary judgment filed by defendants.  Both parties submitted supporting documentation under seal.  On appeal from the district court's decision holding in abeyance the media's motion to intervene pending resolution of the motion for summary judgment, the panel first discussed the common law right of public access to judicial documents, and set forth the procedure for determining whether public access should be denied.  *Lugosch, 435 F.3d* at 119-20.  A court must first determine whether the documents at issue are judicial documents.  If a document is a judicial document, a

8

presumption of access attaches.  A court must next determine the weight of that presumption, ranging from matters that directly affect an adjudication to matters that are tangential.  After determining the weight of the presumption, a court must balance any countervailing factors.  *Id.*

The panel next discussed the public and the media's "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents."  *Id.* at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)).  A court may conclude that such a right exists through either of two approaches.  The "experience and logic" approach "requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'"  *Id.* (quoting *Hartford Courant Co.*, 380 F.3d at 91).  "The second approach considers the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings."  *Id.* (quoting *Hartford Courant Co.*, 380 F.3d at 93).  If a qualified First Amendment right of access exists, "'documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Id.* (quoting *In re New York Times Co.*, 828 F.2d 110,

116 (2d Cir. 1987)).

The panel concluded that the documents in question in *Lugosch* were as a matter of law "judicial documents," to which a common law presumption of access attached, because they had been submitted in connection with a motion for summary judgment. *Id.* at 123. It held that the weight of the presumption of access was "of the highest," and such documents "'should not remain under seal *absent the most compelling reasons*.'" *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (emphasis supplied in *Lugosch*)).

The panel also concluded that "a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion" existed. *Id.* at 124. Thus, the more stringent First Amendment framework applied, justifying continued sealing of documents "only with specific on-the-record findings that sealing is necessary." *Id.* The panel remanded the case to the district court to make the necessary factual findings, which included whether the contested documents were subject to attorney-client privilege, and whether the defendants had "waived the privilege by placing in issue the contents of the privileged information." *Id.* at 125.

## II. Application of *Lugosch*

Using *Lugosch* as a framework, this Court must first determine whether the documents at issue are "judicial

documents," giving rise to a presumption of access.  If they are, then it must determine whether it will weigh and balance under the common law test or employ the more stringent First Amendment standard.

The Court finds, and the parties agree, that a presumption of access under the common law as well as the First Amendment has attached to the documents and testimony in question, given that the Plaintiffs seek to introduce this material at trial.  *See Hartford Courant*, 380 F.3d at 91 (First Amendment qualified right of access applies to civil proceedings); *Amodeo II*, 71 F.3d at 1049 (the public has an "especially strong" right of access to evidence that is or will be used at trial).  As in *Lugosch*, indeed more so, the presumption of access in this case "is of the highest."  *Lugosch*, 435 F.3d at 123 (citing *Joy*, 692 F.2d at 893).

Public access to these materials, although presumed, is not an absolute right.  *Hartford Courant*, 380 F.3d at 91; *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) ("*Amodeo I*").  If this Court is able to demonstrate with specific findings "that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *Lugosch*, 435 F.3d at 120,[1] then

---

[1]  The Court does not consider whether under the common law right of public access "countervailing factors" may justify closure or sealing, given that the more stringent First Amendment standard applies.  *See Lugosch*, 435 F.3d at 124.

11

it may order that documents be sealed or take other protective
measures.  It is the Court's task to determine what will be
sealed or redacted, not one that can be delegated to the parties,
when public access to judicial documents is at stake.  *Amodeo I*,
44 F.3d at 147.

III. <u>Higher values examined</u>

*Lugosch* does not advise how to arrive at a conclusion that
"higher values" than a First Amendment right of access are at
stake.  Case law offers certain circumstances that **may** support a
higher value determination: for example, the well-being of a
minor, *see Globe Newspaper Co. v. Super. Ct. for Norfolk County*,
457 U.S. 596, 607 (1982); privacy interests of prospective
jurors, *see Press-Enter. Co. v. Super. Ct. of Cal., Riverside
County*, 464 U.S. 501, 511-512 (1984); privacy interests in
wiretapped conversations, *see In re New York Times Co.*, 828 F.2d
110, 116 (2d Cir. 1987); a criminal defendant's right to a fair
trial, *see In re Herald* Co., 734 F.2d 93, 100 (2d Cir. 1984);
government activities entitled to confidentiality, such as
ongoing undercover investigations, *see id.;* danger to persons or
property, *see id.;* attorney-client privilege, *see Lugosch*, 435
F.3d at 125; or trade secrets, *see In re Iowa Freedom of Info.
Council*, 724 F.2d 658, 664 (8th Cir. 1983).

The Plaintiffs contend that the interest they assert "— the
protection of their confidential, commercially valuable trade

secret information — has been universally acknowledged as a

'factor' or 'value' that overcomes the public's right of access,

thus justifying the presentation of testimony *in camera* and

documents under seal." Pls.' Br. 3 (Doc. 313).  Notwithstanding

the breathtaking scope of this pronouncement, not one of the

cases cited in the footnote accompanying it stands for the

proposition that trade secret information by its nature defeats

the public's First Amendment right of access.[2]  The Plaintiffs

---

[2]  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 600 n.5
(1980) opined that the preservation of trade secrets **might**
justify the exclusion of the public from some segments of a civil
trial.  *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978)
recognized that under the common law courts **may** refuse to permit
their files to be used as sources of business information that
might harm a litigant's competitive standing.  *Stamicarbon N.V.
v. Am. Cyanamid Co.*, 506 F.2d 532, 540-41 (2d Cir. 1974)
suggested ways in which a district court **might** justify limited *in
camera* procedures, in a case that did not address First Amendment
considerations.  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059,
1073 (3d Cir. 1984) stated that an interest in safeguarding a
trade secret **may** overcome a presumption of openness, depending on
the content of the information.  *In re Iowa Freedom of Info.
Council*, 724 F.2d 658, 664 (8th Cir. 1983), in affirming a
decision to seal portions of a transcript, clarified that "[w]e
do not wish to be understood as announcing a rule that the
presence of trade secrets will in every case and at all events
justify the closure of a hearing."  *Brown & Williamson Tobacco
Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983) acknowledged
an exception to an unfettered right of public access under the
common law for legitimate trade secrets without addressing the
First Amendment.  *Encyclopedia Brown Prods., Ltd. v. Home Box
Office*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) did not involve a
First Amendment analysis.  *Standard & Poor's Corp. v. Commodity
Exch., Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982) noted that
courts have "recognized that the right to attend judicial
proceedings should, *in appropriate circumstances*, give way to the
right to protect one's trade secrets" (emphasis supplied), and
determined that under the facts of that case the potential
interference with trade secrets justified restricted access to

then astonishingly conclude that "once the party seeking trade secret protection establishes that the documents contain trade secret information, or that the witness testimony will likely involve trade secret information; the court should close the courtroom for the trade-secret portions of testimony and seal the documents containing trade secrets." *Id.* 3-4.  They cite *Iowa Freedom of Information Council* for this conclusion, a case which explicitly stated that the presence of trade secrets will not in every case justify closing a hearing.  *See Iowa Freedom of Info. Council*, 724 F.2d at 664.

In fact, just as there is no absolute right to public access, there is no absolute right to protect trade secrets from disclosure.  *See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) ("courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure").  Nevertheless protection of trade secrets may have a higher value than a qualified right of access under the First Amendment in certain cases and under certain circumstances, as the Defendants and BFP acknowledge.  In order to determine whether the information at issue here meets the standard for sealing or closure the Court must first determine whether the information at issue constitutes trade secrets, and then

---

the courtroom.

determine whether under the circumstances protection of
legitimate trade secrets will overcome the First Amendment right
of public access to trials.

IV.  Trade secret

Vermont takes its definition of trade secret from the
Uniform Trade Secrets Act, which codifies the basic principles of
common law trade secret protection and has been adopted in some
form in most states.  *See Dicks v. Jensen*, 172 Vt. 43, 46-47, 768
A.2d 1279, 1282 (2001).  Essentially a trade secret is
information that has independent economic value that is not
readily known to or ascertainable by others, and has been the
object of reasonable efforts to maintain its secrecy.  *Id.*

The Court notes that the parties have been conducting
discovery under a protective order that has required the parties
to designate material turned over in discovery as "Highly
Confidential Information" ("HCI") should they wish to restrict
its use and dissemination.  HCI is defined in the parties' Second
Amended Stipulation as "information in any form, which is not or
was not lawfully publicly available, . . . which . . . the Party
or Non-Party who produced, provided or generated such information
considers to contain confidential business information, trade
secrets or proprietary information."  Protective Order ¶ 1(b).
The Court is informed that all of the documentary information at
issue has been previously designated without objection as HCI for

15

discovery purposes.

That a document or a portion of a deposition or declaration has been designated as a protected trade secret for discovery purposes does not answer the ultimate question of whether it is entitled to protection when weighed against a First Amendment right of access to judicial documents. *See Joy*, 692 F.2d at 893 (matters placed under seal during discovery face different considerations at adjudication stage). However, the Plaintiffs have submitted sworn declarations from Mark D. Edie, an attorney from Ford Motor Company's Office of the General Counsel; David W. Schrumpf, an attorney with the General Motors Legal Staff; and Reginald R. Modlin, Director of Environmental Affairs at DaimlerChrysler Corporation, who have described specific exhibits that the Plaintiffs seek to have sealed or redacted.[3] *See* Second Decl. of Edie (Doc. 303, Ex. 9); Decl. of Schrumpf (Doc. 303, Ex. 13A&B); Decl. of Modlin (Doc. 303, Ex. 14). The Plaintiffs have also submitted sworn declarations from John W. Alden, Jr., a senior counsel at Honda North America; Elizabeth Barrowman Gibson, managing counsel of Toyota Motor Sales, USA, Inc.; and Raymond Coss, senior counsel in the legal department at Nissan North America, Inc., who have reviewed the depositions of their corporate representatives and aver that the substance of their

---

[3]  The Court has not been informed whether the exhibits discussed in these declarations constitute a complete list of the documents at issue.

testimony consists of highly confidential trade secrets. *See* Decls. of Alden, Gibson, Coss (Doc. 303, Exs. 6, 7, 8).  In addition the Plaintiffs have submitted sworn declarations from representatives of BMW of North America, LLC, DaimlerChrysler Corporation, Honda North America, Nissan North America, Inc., Toyota Motor Sales, Inc., General Motors and Ford Motor Company describing the efforts that the automobile manufacturers have undertaken to maintain the confidentiality of the material supplied in discovery and the damage they would sustain should confidential business information be disclosed.  *See* Decls. of Weverstad (Doc. 268, Att. 2), Morrissett Doc. 268, Att. 3, Alden, Coss, Gibson, Schrumpf & Edie.

The declarations clearly support the Plaintiffs' contentions that the depositions and documents referenced contain trade secrets.  And the Court is satisfied that the automobile manufacturers have expended considerable effort to maintain the secrecy of this information from their competitors.  Thus the "further factual development" the Defendants urge is in general unnecessary.  *See* Defs.' Opp'n 9-13.  However, the Court is unable to ascertain from the submissions to date what portion of a particular document or deposition may constitute trade secrets, and therefore it lacks the ability to perform "narrow tailoring" should it determine that protection is warranted.  Review of the documents and testimony themselves is essential.  Accordingly,

the Court directs the Plaintiffs to submit for *in camera* review, each item for which they seek protection from disclosure at trial, the portion that they wish redacted or sealed, along with an explanation of the information's value to the company and/or its competitors, and the extent to which the information is available or known outside the company.[4]

V.   Higher values evaluated

Use of the comparative term "higher" denotes an evaluation of competing interests, *see ABC, Inc. v. Stewart*, 360 F.3d 90, 100 (2d Cir. 2004), in this case the First Amendment right of public access versus the protection of trade secrets.  The interest in public access to a trial and material to be submitted at a trial concerning significant public policy issues is "of the highest" value.  *See Lugosch*, 435 F.3d at 123 & n.5.  But "every piece of evidence, no matter how tangentially related to the issue," will not necessarily be subject to public scrutiny.  *Joy*, 692 F.2d at 893.

In evaluating whether trade secret protection exceeds the right of public access for these documents and testimony, the Court will consider the extent of the closure or sealing sought; the potential damage to the Plaintiffs from disclosure; the significance of the public interest at stake; the extent to which

---

[4]  The Court declines to adopt, at this time, the eleven-factor standard employed by the Vermont Public Service Board for its regulatory hearings.

the Plaintiffs intend to prove their case by relying on documents
they seek to withhold from public scrutiny; whether the
particular matter is integral or tangential to the adjudication.
*See id.* ("The importance of the material to the adjudication, the
damage disclosure might cause, and the public interest in such
materials should be taken into account before a seal is
imposed.")

    The Plaintiffs have stressed throughout the course of this
litigation the critical importance of this case to the public,
including consumers and manufacturers.  They have stated that
they welcome media attention and public debate on the issues.
They seek to show, among other things, that the greenhouse gas
emissions regulations at issue will have a crippling financial
effect on the automotive industry.  All parties will be afforded
the opportunity to prove or establish a lack of proof on this
matter.  But the Court is troubled by the implication that the
Plaintiffs may introduce evidence on this point that they do not
want the public to see.  Presumably they wish the Court to rely
on this evidence in its findings and conclusions; does the Court
refer to sealed documents or secret testimony in its opinion?
Does it seal its opinion if based upon trade secrets submitted
under seal?  The Second Circuit instructs:  documents "'should
not remain under seal *absent the most compelling reasons*,'"
*Lugosch*, 435 F.3d at 123.  By the same token, only in the most

extraordinary situation will this Court justify closing a trial
to the public and the press.

Before such dramatic measures are even contemplated, the
parties should be prepared, at a status conference to be held on
March 26, 2007, at 1:30 p.m., to demonstrate the relevance at
trial of the categories of documents and testimony for which they
still seek sealing or closure.  The Court recognizes the
relevance of Plaintiffs' evidence on the projected costs of
compliance with the regulations, but is laboring to understand,
for example, the relevance of current or future vehicle design
information, profit and loss statements, or proprietary software.
The content of the information at issue may be critical where an
interest in safeguarding a trade secret may override a right to
public access.  *See Publicker Indus., Inc. v. Cohen*, 733 F.2d
1059, 1073 (3d Cir. 1984).  Following this conference the
Plaintiffs may submit the documents and portions of testimony
deemed relevant for *in camera* review, and the Court will schedule
a hearing for further argument on Plaintiffs' motion.


Dated at Burlington, in the District of Vermont, this 23rd
day of March, 2007.

                              /s/ William K. Sessions III
                              William K. Sessions III
                              Chief Judge
                              U.S. District Court


20